## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-00227-RBJ

LYLE BYRUM,

      *Plaintiff*

v.

WELLS FARGO BANK, N.A.,

      *Defendant*

---

## AMENDED COMPLAINT WITH JURY DEMAND

---

The Plaintiff, Lyle Byrum, by and through his attorneys, Causey & Howard, LLC, and for his Complaint against the Defendant, Wells Fargo Bank, N.A., a national banking firm, states as follows:

### PARTIES AND VENUE

1.      Plaintiff, Lyle Byrum (hereinafter "Byrum"), is an individual residing in El Paso, Texas.

2.      Defendant, Wells Fargo Bank, N.A. (hereinafter "Wells Fargo" or "Bank"), is a national banking firm with its designated offices in South Dakota and with offices located at 2387 F Road, Grand Junction, CO 81505.

3.      The real property made the subject matter of Plaintiff's claims is located in Colorado and the actions of Defendant complained of by Plaintiff occurred primarily in Colorado.

4.    The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. Sections 1332.  Venue lies in this District pursuant to 28 U.S.C. Section 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this District.

## GENERAL ALLEGATIONS

5.    Plaintiff incorporates by reference all of the allegations contained in paragraph numbers 1 through 4 as if fully set forth herein.

6.    On or about January 15, 2008, Byrum, through his representative, DeeAnna Underhill ("Underhill"), consulted with Patricia Morales ("Morales"), a Wells Fargo Lending Officer, at the offices of Wells Fargo located at 34237 Highway 6, Edwards, Colorado regarding the advisability and feasibility of purchasing a residential property in Eagle County, Colorado.

7.    On that date, Underhill advised Morales that neither she nor Byrum were residents of Colorado and further advised that they did not have any business or personal connections in Eagle County, Colorado.  As a result, Underhill asked Morales if she would assist Byrum and Underhill with locating property in Eagle County, Colorado.

8.    Morales agreed that she, on behalf of Wells Fargo, would help Byrum and Underhill locate property in Eagle County, Colorado.

9.    Immediately after this meeting on January 15, 2008, Morales located a real estate agent for Underhill and Byrum. Morales participated with Underhill in locating properties in Eagle County, Colorado.  Underhill and Morales formed a friendship and met either at the Wells Fargo offices or for coffee on several occasions in 2008 in Eagle County, Colorado.  Underhill and Morales talked on the phone on numerous occasions in 2008.

10. Underhill and Morales discussed several Eagle County properties but Morales advised Underhill that Cordillera was "the premiere community in Eagle County, Colorado" and that Byrum should purchase in the development known as Cordillera and Wells Fargo would finance a property in Cordillera.

11. The property that Morales recommended is located at:  LOT 8, BENTGRASS AT CORDILLERA, ACCORDING TO THE PLAT RECORDED SEPTEMBER 13, 1993 IN BOOK 619 AT PAGE 200, COUNTY OF EAGLE, STATE OF COLORADO, ALSO KNOWN AS LOT 8, BENTGRASS AT CORDILLERA, AKA 5 FAIRWAY LANE, EDWARDS, CO 81632, together with certain fixtures and personal property located within the real property and memberships in The Cordillera Property Owners Association and the Bentgrass at Cordillera Association (the "Property").

12. After locating the Property, on or about February 1, 2008, Byrum and Underhill explained to Morales that the Property and all of its related facilities, including three golf courses, association operated restaurants, health club, horseback riding club and other common area facilities would be used for personal and business purposes and be placed in the rental market to earn income for the owner's benefit, including debt service to the Bank or any other institution engaged in the business of real estate mortgage lending who would finance the acquisition of the Property.

13. In response to these further assertions, Morales represented to Byrum and Underhill that:

a. The Bank was knowledgeable regarding the community and business community of Eagle County, Colorado;

b. the Bank was experienced in mortgage lending in the area;

c.      the Bank had a knowledgeable real estate lending department;

d.      the Bank had the community contacts to facilitate the closing of a mortgage loan on the Property, including available appraisers, a title company and a possible lender for financing of the association membership cost of $125,000;

e.      the Bank was familiar with the Cordillera development where the Property is located;

f.      the Bank was interested in financing Byrum's acquisition of the Property, subject to the customary requirements of credit approval, the appraised value of the Property, a first mortgage lien and related matters; and

g.      Morales, as a trusted advisor, specifically recommended Cordillera over any other property in Eagle County, Colorado and steered Underhill and Byrum to such Property.

14.     In reliance upon these assertions, Byrum and Underhill believed a trust relationship existed between themselves and the Bank, and in furtherance of this reliance, Byrum proceeded to satisfy the Bank's requirements for consideration and approval of an acceptable loan and purchased the Property.

15.     Wells Fargo arranged for Alpine Bank to finance the purchase of the $125,000 Cordillera Property Owners Association Membership Fee.

16.     Wells Fargo located the title company for Byrum and Underhill.

17.     From January 15, 2008 to February 12, 2008, knowing that Byrum wanted to use this property for investment purposes, Morales failed to tell Byrum that various aspects of Cordillera, including the property owners association and the golf club, had been involved in litigation over misappropriation of funds, among other allegations, since 2004, with the most recent litigation filed on January 4, 2008 in Eagle County, Colorado.   Also

unbeknownst to Byrum, Wells Fargo's affiliate, Wells Fargo Financial Leasing, held equipment leases for the Cordillera Golf Club.

18.     As holder of the equipment leases for the Cordillera Golf Club, Wells Fargo had knowledge of the substantial litigation occurring in Eagle County, Colorado and in Colorado.

19.     Even with this knowledge, Morales continued to steer Byrum to Cordillera as "the premiere community in Eagle County" and encouraged Byrum to purchase in Cordillera.

20.     On February 12, 2008, at the closing of the Property ("Closing"), Byrum inquired as to why the interest rate was so high and Morales responded that it was not a problem and that they should continue with the Closing because Byrum could refinance when the rates decreased.

21.     On February 12, 2008, Byrum's credit score was approximately 780.  Morales failed to inform Byrum that by signing the loan agreement with Wells Fargo on that date, this would reduce his credit score by approximately 100 points, or to 680, which is 20 points under the refinance qualification standard of 700 for the Bank.

22.     The terms of the loan included an interest rate 6.375% per annum (in line with then current market interest rates), a seventy five percent (75%) loan to value ratio (or $926,250.00), monthly payments of $5,778.59, and a down payment by Byrum of $250,000.00 (the "Loan").

23.     Byrum relied upon the representations of Morales, the Loan closed and the Property was purchased on February 12, 2008 at Land Title Guarantee Co., 0090 Benchmark Rd. #205, P O Box 3480, Avon, CO  81620.

24.     Simultaneously, and in reliance on the representations of Morales and the requirements of the Cordillera Property Owners Association, Byrum purchased a membership in the Cordillera Property Owners Association for $125,000.00.

25.     Through the date of this Amended Complaint, Byrum has timely performed under the terms of the Loan.

26.      On or about April 15, 2012, in reliance upon Morales' representations, Byrum applied for a refinance of the Property with Wells Fargo to reduce the interest rate to then lower current market rates. Byrum submitted the application to Bonnie Marlette ("Marlette") with Wells Fargo Home Mortgage.  Byrum submitted all requested financial information with his application and was advised by Marlette that he would be approved but he did not receive a Good Faith Estimate.

27.     On October 4, 2012, Steven Zollar ("Zollar"), with Wells Fargo Home Mortgage, advised Byrum that Bonnie Marlette had suffered a nervous breakdown and promised to complete the refinance.  Zollar requested financial information from Byrum again and Byrum immediately provided it.  Accordingly, Byrum resubmitted his application for a refinance but was not provided a good faith estimate.  Zollar advised Byrum that he would be approved.

28.     In November 2012, after years of embroiled litigation, Byrum learned that certain aspects of the Cordillera community were filing for bankruptcy.

29.     Wells Fargo Financial Leasing was listed as a creditor in the bankruptcy.

30.     As a result, the Property value decreased substantially.  As of this date, the property is valued at $921,520.00.

31.     On November 21, 2012, Jennifer Byrnes, a Wells Fargo Private Mortgage Banker, advised Byrum that she would complete the refinance and requested additional financial information that was provided by Byrum. Once again, Byrum was advised that the refinance was approved but no good faith estimate was provided.

32.     On February 5, 2013, Melanie Colvin ("Colvin"), a Wells Fargo Private Mortgage Banker, took over the refinance and advised that it would be completed and closed within ninety (90) days as long as an updated appraisal was completed.

33.     On February 19, 2013, Colvin notified Byrum that the refinance was denied because Byrum's credit score was 680 and the Wells Fargo lending requirements required a credit score of 700 or greater.  The only negative element on Byrum's credit report was the Wells Fargo mortgage on the Property.  Colvin told Byrum, "I am sorry that you were not told this information from the very beginning."

34.     During the course of the extraordinarily lengthy process, the Bank additionally told Byrum that the value of the Property had declined such that the loan to value ratio was not within the Bank's minimum requirements, in part due to the bankruptcy filing of the Cordillera Community.

35.     On March 25, 2013, Byrum applied for a loan modification with Wells Fargo and contacted Colton Delong ("Delong") in the Wells Fargo loan modification department to complete such request. Delong requested financial information from Byrum and Byrum directed Delong to Colvin who provided the information to Delong.

36.     On May 16, 2013, Delong sent a facsimile form letter indicating the loan modification was not approved because "requested information was not provided within the timeframe."

37.     On August 7, 2013, Byrum applied for a loan modification with Wells Fargo again through Kristin Neuroth with the Wells Fargo loan modification department.  Byrum provided all requested information via Federal Express.

38.     On September 19, 2013, Byrum received another form letter from Wells Fargo declining the loan modification because "requested information was not provided within the required timeframe."

39.     On September 29, 2013, Byrum received a solicitation from the same office of the Bank to conduct mortgage business with the Bank.

40.     The current mortgage interest rate as of this date ranges from 3.33% to 4.41%.

## FIRST CLAIM FOR RELIEF
### (Fraudulent Concealment)

41.     Plaintiff incorporates by reference all of the allegations contained in paragraph numbers 1 through 40 as if fully set forth herein.

42.     Plaintiff asserts that at the time of the origination of the Loan the Cordillera community, which includes but is not limited to the Cordillera Golf Club and Cordillera Property Owners' Association ("Cordillera Community"), was experiencing financial difficulties and there were allegations of misappropriation of funds against it, as indicated by the litigation that had been occurring in relation to the Cordillera Community since 2004.

43.     At the time of the origination of the Loan the Bank knew that the financial difficulties experienced by and allegations of the misappropriation of funds against the Cordillera Community would potentially have a negative impact on the value of the Property. Wells Fargo affiliates were intimately involved with the Cordillera community at the time of origination of the loan.

8

44.     Further, the Bank knew or should have known that the reporting of the amount of the Loan would have an adverse impact upon Plaintiff's credit scores such that Plaintiff would be unable to refinance the Property or qualify to modify the Loan to reduce the interest rate.

45.     At the time of the origination of the Loan the financial difficulties of and allegations of misappropriation against the Cordillera Community, as well as the potential negative impact on the value of the Property and Plaintiff's credit scores if the Loan amount was reported, were material existing facts that in equity and good conscience should have been disclosed to Plaintiff as a prospective purchaser of the Property.

46.     At the time of the origination of the Loan, Morales, as advisor, and Underhill and Byrum, as advisee, were engaged in an advisor/advisee relationship.

47.     At the time of the origination of the Loan, Morales knowingly concealed from Plaintiff the financial difficulties experienced by and allegations of misappropriation against the Cordillera Community, as well as the potential negative impact on the value of the Property and Plaintiff's credit scores if the Loan amount was reported, that in equity and good conscience she should have disclosed to Plaintiff as a prospective purchaser of the Property.

48.     At the time of the origination of the Loan, Plaintiff was ignorant of the fact that the Cordillera Community was experiencing financial difficulties and that there were allegations of misappropriation of funds against it which would potentially have a negative impact on the value of the Property and his credit scores if the Loan was reported.

49.     At the time of the origination of the Loan, Morales intended for Plaintiff to act on, by his purchase of the Property, her concealment of the financial difficulties of and allegations against the Cordillera Community.

50.     Due to the Bank's concealment, Plaintiff has been damaged by having paid a purchase price reflecting an inflated value for the Property considering the financial difficulties of the Cordillera Community, investing the $250,000 down payment, purchasing for $125,000 the near worthless property owners association membership, and paying excessive interest charged by the Bank, all in excess of the minimum jurisdictional limits of this Court.

**WHEREFORE,** Plaintiff seeks damages as a result of Defendant's actions as set forth above, and for any other relief this Court deems proper.

**SECOND CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty and Duty of Good Faith and Fair Dealing)**

51.     Plaintiff incorporates by reference all of the allegations contained in paragraph numbers 1 through 50 as if fully set forth herein.

52.     At all times relevant hereto Morales was employed by the Bank and was acting on behalf of the Bank.

53.     Because Morales acted on behalf of the Bank and advised and counseled Byrum and Underhill on where to purchase property, what property to purchase, who to use as a real estate agent, who to use as the title company, who to use for the home equity line of credit and further advised that the Bank was knowledgeable on all matters relating to the purchase of property in Eagle County, Byrum and Underhill justifiably assumed that the Bank would act in Byrum's best interest.

54.     This relationship was atypical and constituted more than a lender-borrower relationship, establishing a fiduciary relationship between the Bank and Byrum, and giving rise to a duty of the Bank to be fair, honest and to conduct all of the business with Byrum in good faith.

55.     The implied contractual duty of good faith and fair dealing established the same minimum standards to the actions of the parties' dealings.

56.     By the Bank's actions described above, it breached its fiduciary duty and the implied contractual duty of good faith and fair dealing, resulting in damages, including but not limited to payment of excessive interest from April 12, 2012 and damage to his credit rating, all in an amount to be proven at trial.

**WHEREFORE,** Plaintiff seeks damages as a result of Defendant's actions as set forth above, and for any other relief this Court deems proper.

### THIRD CLAIM FOR RELIEF
#### (Negligence)

57.     Plaintiff incorporates by reference all of the allegations contained in paragraph numbers 1 through 56 as if fully set forth herein.

58.     As a fiduciary, the Bank owed a duty of care to Plaintiff.

59.     The Bank's promise to refinance the Loan at Closing and the subsequent failure to follow through on Plaintiff's refinance applications in a timely manner, misleading representations about the status of the Loan, failure to provide a good faith estimate, delay and incompetence constituted negligence.

60.     The Bank's negligence as described in paragraph 59 of this Amended Complaint was the direct and proximate cause of Plaintiff's damages, including but not

limited to payment of excessive interest and damage to his credit rating, all in an amount to be proven at trial.

**WHEREFORE,** Plaintiff seeks damages as a result of Defendant's actions as set forth above, and for any other relief this Court deems proper.

### FOURTH CLAIM FOR RELIEF
### (Negligent Misrepresentation – Nondisclosure)

61.     Plaintiff incorporates by reference all of the allegations contained in paragraph numbers 1 through 60 as if fully set forth herein.

62.     From January 15, 2008 through February 12, 2008, the Bank failed to disclose to Byrum that the Cordillera Community had been the subject of litigation since 2004 for matters that included misappropriation of funds.

63.     From January 15, 2008 through February 12, 2008, the Bank failed to disclose to Byrum that the Loan would reduce his credit score to such an extent that it would eliminate his ability to refinance the Loan.

64.     The information in Paragraphs 62 and 63 of this Amended Complaint was material information.

65.     The Bank, through Morales, had a fiduciary relationship with Byrum, and accordingly owed a duty to Byrum to disclose any material information.

66.     The material information as set forth in Paragraphs 62 and 63 of this Amended Complaint was known to the Bank at the time of the Closing.  If it was not known to the Bank, it was susceptible of knowledge at the time of the Closing and the Bank was in a superior position to obtain the knowledge.

67.     Byrum relied on the statements made by Morales that encouraged him to purchase the Property and close the Loan.

68.     Byrum's reliance on the statements was justifiable.

69.     As a result of Byrum's reliance, Byrum has suffered damages in an amount to be proven at trial.

70.     When the Bank failed to disclose the material information referenced in Paragraphs 62 and 63 of this Amended Complaint, the Bank was aware, or should have been aware, that the information should have been disclosed.

71.     The Bank's actions and conduct constitute negligent misrepresentation through non-disclosure, causing Plaintiff to suffer damages, including but not limited to payment of excessive interest and damage to his credit rating, all in an amount to be proven at trial.

**WHEREFORE,** Plaintiff seeks damages as a result of Defendant's actions as set forth above, and for any other relief this Court deems proper.

## FIFTH CLAIM FOR RELIEF
### (Colorado Consumer Protection Act C.R.S. Section 6-1-105)

72.     Plaintiff incorporates by reference all of the allegations contained in paragraph numbers 1 through 71 as if fully set forth herein.

73.     From January 15, 2008 through February 12, 2008, the Bank failed to disclose to Byrum that the Cordillera Community had been the subject of litigation since 2004 for matters that included misappropriation of funds.

74.     From January 15, 2008 through February 12, 2008, the Bank failed to disclose to Byrum that the Loan would reduce his credit score to such an extent that it would eliminate his ability to refinance the Loan.

75.     The information in Paragraphs 73 and 74 of this Amended Complaint was material information.

76.     The Bank, through Morales, had a fiduciary relationship with Byrum, and accordingly owed a duty to Byrum to disclose any material information.

77.     The material information as set forth in Paragraphs 69 and 70 of this Amended Complaint was known to the Bank at the time of the Closing.  If it was not known to the Bank, it was susceptible of knowledge at the time of the Closing and the Bank was in a superior position to obtain the knowledge.

78.     The failure to disclose this material information to Byrum at Closing was intended to induce Byrum to enter into the Loan.

79.     This failure to disclose occurred in the course of Defendant's business.

80.     This failure to disclose significantly impacts the public as actual or potential consumers of Defendant's services.

81.     The Bank's failure to disclose constitutes deceptive trade practices and caused Plaintiff to suffer damages, including but not limited to payment of excessive interest, devaluation of the Property and damage to Plaintiff's credit rating, reasonable attorney fees, all in an amount to be proven at trial.

### SIXTH CLAIM FOR RELIEF
### (Prohibited Acts under C.R.S. Section 38-40-105)

82.     Plaintiff incorporates by reference all of the allegations contained in paragraph numbers 1 through 81 as if fully set forth herein.

83.     From January 15, 2008 through February 12, 2008, the Bank failed to disclose to Byrum that the Cordillera Community had been the subject of litigation since 2004 for matters that included misappropriation of funds.

84.     From January 15, 2008 through February 12, 2008, the Bank failed to disclose to Byrum that the Loan would reduce his credit score to such an extent that it would

eliminate his ability to refinance the Loan.

85.    The information in Paragraphs 83 and 84 of this Amended Complaint was material information.

86.    The Bank, through Morales, had a fiduciary relationship with Byrum, and accordingly owed a duty to Byrum to disclose any material information.

87.    The material information as set forth in Paragraphs 83 and 84 of this Amended Complaint was known to the Bank at the time of the Closing.  If it was not known to the Bank, it was susceptible of knowledge at the time of the Closing and the Bank was in a superior position to obtain the knowledge.

88.    The failure to disclose this material information to Byrum at Closing was intended to induce Byrum to enter into the Loan.

89.    The Bank's failure to disclose material information constitutes an unconscionable act or practice and caused Plaintiff to suffer damages, including but not limited to payment of excessive interest, devaluation of the Property and damage to Plaintiff's credit rating, all in an amount to be proven at trial.

**WHEREFORE,** Plaintiff seeks equitable damages as a result of Defendant's actions as set forth above, and for any other relief this Court deems proper.

**PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

**WHEREFORE,** Plaintiff requests judgment as follows:

1.    On all of Plaintiff's Claims for Relief, judgment in favor of Plaintiff and against Defendant for damages in an amount to be established at trial;

2.    Equitable relief as requested herein;

3.    Costs and expenses of this action, including expert witness fees, if necessary;

4.      Reasonable attorney fees to the extent permitted by law;

5.      Pre- and post-judgment interest on any award of damages, to the extent

permitted by law; and

6.      Any other relief this Court deems just and equitable.

**DATED** this 20th day of February, 2014.

CAUSEY & HOWARD, LLC

By: */s/ Inga Causey /s/*
Inga H. Causey
P.O. Box 98
Vail, CO 81658
Tele. 970.926.6556
Fax. 1.970.797.4929
Email. inga.causey@me.com
Attorneys for Plaintiff

Address of Plaintiff:

Lyle Byrum
7007 Boeing
El Paso, Texas  79925